UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IVELISSE RAMIREZ, *on behalf of herself, FLSA Collective Plaintiffs, and the Class*,<br><br>Plaintiff,<br><br>-v.-<br><br>LIBERTY ONE GROUP LLC, and LIBERTY ONE BROOKLYN LLC,<br><br>Defendants. | 22 Civ. 5892 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:[1]

　　Plaintiff Ivelisse Ramirez sued her former employers, Liberty One Group LLC ("Liberty One") and Liberty One Brooklyn LLC ("Liberty Brooklyn," and together with Liberty One, "Defendants") for violations of the federal Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219. In brief, she alleges that Defendants failed to pay her the wages she was due because of their unlawful policy of time shaving. Plaintiff also brings claims (not relevant to this motion) for pregnancy discrimination under the New York State and New York City Human Rights Laws and for wage and notice violations under the New York Labor Law (the "NYLL"). Plaintiff now moves for conditional certification of a collective action and related relief under Section 216(b) of the FLSA. She also moves for equitable tolling of the statute of limitations on behalf of putative collective members. For the reasons that follow, the Court grants in part Plaintiff's motion for conditional certification, approves in large measure her

---

[1]　　Alex Geyelin, a rising second-year student at the Georgetown University Law Center and an intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

proposed notice, and denies without prejudice Plaintiff's motion for equitable tolling.

## BACKGROUND[2]

### A.    Factual Background[3]

#### 1.    The Parties and Relevant Policies

Plaintiff began working for Defendants as a cleaner in or around June 2021. (Compl. ¶ 26; Ramirez Decl. ¶ 1). She worked primarily at 249 Varet Street in Brooklyn,[4] but filled in at other locations around New York City as needed. (Compl. ¶ 26; Ramirez Decl. ¶ 1). Defendants are real estate companies that specialize in acquisitions, investments, development, and

---

[2]    The facts in this Opinion are drawn from the Complaint (Dkt. #1 ("Compl.")) and the Declaration of Plaintiff Ivelisse Ramirez submitted in support of the motion (Dkt. #27-3 ("Ramirez Decl.")). The Court also references Plaintiff's proposed notice and consent to sue form, filed as Exhibit A to the Declaration of C.K. Lee (Dkt. #27-1 ("Lee Decl., Ex. A")). Other facts sourced from the declarations and their accompanying exhibits are cited using the convention "[Name] Decl., Ex. [ ]."

For ease of reference, the Court refers to Plaintiff's memorandum of law in support of her motion for conditional certification as "Pl. Br." (Dkt. #26); to Defendants' opposition memorandum of law as "Def. Opp." (Dkt. #30); and to Plaintiff's reply memorandum of law as "Pl. Reply" (Dkt. #33).

[3]    Plaintiff bears the burden on a Section 216(b) motion. Accordingly, the Court focuses primarily on Plaintiff's account of the facts at this stage of the litigation. *See Myers* v. *Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (describing the "modest factual showing" needed for a motion for conditional certification). The Court also "grant[s] the plaintiff the benefit of the doubt given the posture of this motion." *Williams* v. *Movage Inc.*, No. 17 Civ. 2628 (KPF), 2018 WL 1940435, at *1 n.2 (S.D.N.Y. Apr. 24, 2018) (quoting *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *1 n.1 (S.D.N.Y. Sept. 16, 2013)). By contrast, the Court cannot and does not consider the factual assertions contained in Defendants' opposition brief. *See Escobar* v. *Motorino E. Vill. Inc.*, No. 14 Civ. 6760 (KPF), 2015 WL 4726871, at *3 (S.D.N.Y. Aug. 10, 2015); *see also Bhumithanarn* v. *22 Noodle Market Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015).

[4]    Plaintiff initially identifies her primary worksite as 249 Varick Street. (*See* Compl. ¶ 26). In their opposition, Defendants suggest that the actual address of Plaintiff's worksite was 249 *Varet* Street. (Def. Br. 5). Plaintiff seems to adopt this correction in reply. (*See* Pl. Reply 8). Without making any determination as to the actual address of Plaintiff's primary worksite, the Court refers to the site as "249 Varet Street."

management of New York City properties, with Liberty Brooklyn a subsidiary of Liberty One.  (Compl. ¶¶ 7-8).  Liberty Brooklyn is Plaintiff's nominal employer, as reflected by her pay stubs, but she was interviewed and hired at an office space shared by both Defendants at 88 Pine Street.  (*Id.*; Ramirez Decl. ¶ 3; *see also* Lee Decl., Ex. B (representative paystubs)).  In addition to sharing an office, Defendants share a human resources department, executive officers, and a phone number.  (Compl. ¶ 8; Ramirez Decl. ¶ 3).

Plaintiff's scheduled working hours throughout her employment were 7:00 a.m. through 4:30 p.m. five days a week, amounting to a total of 47.5 scheduled hours per week, and the other members of the proposed collective worked "the same or similar" schedules.  (Compl. ¶ 27; Ramirez Decl. ¶ 5).  Throughout her employment, Plaintiff's base pay rate was $15.00 per hour and her overtime rate was $22.50 per hour.  (Compl. ¶ 28; Ramirez Decl. ¶ 6).  These pay rates align with those of the other proposed collective members.  (Compl. ¶ 28; Ramirez Decl. ¶ 6).

Plaintiff alleges that throughout her employment she was not paid for all of the hours she worked, including overtime hours.  (Compl. ¶ 29; Ramirez Decl. ¶ 7).  Plaintiff describes Defendants' regular practice of "time shaving" about 30 from each day she worked.  (Compl. ¶ 30; Ramirez Decl. ¶¶ 7-8).  More specifically, she claims that her manager, Luciano, would direct her to clock out at 4:30 p.m., but then require her to perform additional cleaning duties.  (Compl. ¶ 30; Ramirez Decl. ¶¶ 7-8).  Because Plaintiff clocked out

before working that additional time, it was not recorded on her timesheets and she was not compensated for it.  (Compl. ¶ 30; Ramirez Decl. ¶¶ 7-8).

### 2.    The Collective Allegations

Plaintiff avers that the time shaving she suffered was not unique to her, but instead is representative of a company-wide pattern.  She notes that throughout her employment she personally "observed" Luciano subject other workers to the same unlawful policy of directing employees to return to work after clocking out.  (Ramirez Decl. ¶ 8).  Plaintiff further reports that she "regularly spoke" with at least four coworkers about this pattern and about similar conduct occurring at other locations at which they worked for Defendants.  (*Id.* ¶¶ 4, 9).  Plaintiff identifies these four coworkers by first name only (Carmen, Alba, Jonathan, and Francis), and describes each as "cleaning staff."  (*Id.* ¶ 4).  Plaintiff alleges that Defendants' system was designed to suppress payroll and that the employees refrained from complaining out of fear of retaliation.  (*Id.* ¶ 8).

### B.    Procedural Background

Plaintiff initiated this action by filing the Complaint on July 11, 2022. (Dkt. #1).  On September 23, 2022, after the Court extended the answer deadline at Defendants' request (Dkt. #13-14), Defendants filed their answer to the Complaint (Dkt. #17).  On October 26, 2022, the Court held an initial pretrial conference and shortly thereafter entered the parties' proposed case management plan.  (Dkt. #21).  The case is currently in discovery.

Plaintiff filed her motion for collective conditional certification and accompanying papers on December 22, 2022.  (Dkt. #25-27).  Defendants then filed their opposition papers on January 26, 2023.  (Dkt. #30-32).  On February 2, 2023, Plaintiff filed a reply memorandum of law in further support of her motion.  (Dkt. #33).

## DISCUSSION

### A.  Applicable Law

#### 1.  The FLSA Generally

The FLSA permits aggrieved employees to bring collective actions against their employers for unlawful employment practices.  The statute authorizes suits "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Unlike class actions brought under Federal Rule of Civil Procedure 23, FLSA collective actions need not satisfy the standards of numerosity, typicality, commonality, and representativeness.  *Young* v. *Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005); *see also* Fed. R. Civ. P. 23(a).  "Also unlike Rule 23, only potential plaintiffs who 'opt in' by filing written consents to join the collective action can be 'bound by the judgment or benefit from it.'"  *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013) (quoting *Gjurovich* v. *Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003)).  District courts may, in their discretion, "facilitat[e] notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  *Myers* v. *Hertz Corp.*, 624

F.3d 537, 554 (2d Cir. 2010) (internal quotation marks omitted) (quoting

*Hoffmann-La Roche Inc.* v. *Sperling*, 493 U.S. 165, 169 (1989)).

> **2.     Collective Certification Under Section 216(b) of the FLSA**

The Second Circuit has endorsed a two-step method in certifying FLSA

collective actions.  *Myers*, 624 F.3d at 555.  At the first and instant step, courts

consider whether "to send notice to potential opt-in plaintiffs who may be

'similarly situated' to the named plaintiffs with respect to whether a FLSA

violation has occurred."  *Id.* (citations omitted).  Plaintiffs bear a low burden at

this step: they need only "make a modest factual showing that they and others

together were victims of a common policy or plan that violated the law," and

upon such a showing, they may send notice to those potential opt-in plaintiffs

deemed "similarly situated" with respect to the alleged FLSA violation.  *Glatt* v.

*Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2015); *Myers*, 624

F.3d at 555.  "Because minimal evidence is available at this stage, this

determination is made using a 'relatively lenient evidentiary standard.'"

*McGlone* v. *Cont. Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012)

(quoting *Mentor* v. *Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y.

2007)).  "However, certification is not automatic."  *Taveras* v. *D & J Real Est.*

*Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018).  "Although a plaintiff's factual

showing is modest, it cannot be satisfied by unsupported assertions or

conclusory allegations."  *Id.*

At the second step, "the district court will, on a fuller record, determine

whether a so-called 'collective action' may go forward by determining whether

the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555.  This second step "typically occurs after the completion of discovery[.]" *Bifulco* v. *Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009).  At that time, the court may "'decertify the class or divide it into subclasses, if appropriate.'" *McGlone*, 867 F. Supp. 2d at 442 (quoting *Iglesias-Mendoza* v. *La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007)).

In deciding a conditional certification motion, "'the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" *Winfield* v. *Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012) (quoting *Cunningham* v. *Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)).  Courts in this District have thus "establish[ed] a common practice" of conditionally certifying FLSA collective actions based upon even a single plaintiff's affidavit.  *Alves* v. *Affiliated Home Care of Putnam, Inc.*, No. 16 Civ. 1593 (KMK), 2017 WL 511836, at *4 (S.D.N.Y. Feb. 8, 2017); *see also Escobar* v. *Motorino E. Vill. Inc.*, No. 14 Civ. 6760 (KPF), 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015) (collecting cases).  More specifically, Courts in this District have repeatedly granted conditional certification based upon a single plaintiff's affidavit containing no more than some combination of descriptions of personal experience, observations of other employees sharing that experience, and references to conversations with those employees.  *See, e.g.*, *Hernandez* v. *Bare Burger Dio Inc.*, No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (finding that plaintiff's declaration describing personal experience and observations of

others' experiences made the requisite "modest factual showing" and noting that courts "have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit"); *Sanchez* v. *Gansevoort Mgmt. Grp., Inc.*, No. 12 Civ. 75 (KBF), 2013 WL 208909, at *1 (S.D.N.Y. Jan. 10, 2013) (concluding that plaintiffs had met their "light burden" by attesting that one of the plaintiffs "observed other employees who performed the same job duties that [she] performed" and had "knowledge that those other employees worked more than [40] hours per week but were not separately paid an overtime premium" (internal quotation marks omitted)); *Khamsiri* v. *George & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265 (PAE), 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (conditionally certifying collective based on single declaration "confirming that [the plaintiff] and other non-exempt employees" were "paid less than the statutory minimum wage and not paid overtime pay").

**B.    Analysis**

### 1.    Plaintiff Adequately Alleges That Liberty One and Liberty Brooklyn Act as a Single Integrated Enterprise

Defendants argue that only Liberty Brooklyn was Plaintiff's employer, while Liberty One is uninvolved in the dispute and is thus an improper party to the action.  (Def. Opp. 2).  Plaintiff responds that both are proper defendants because they operate as a "single integrated enterprise."  (Pl. Br. 2).  If Plaintiff's allegations as to the relationship between Defendants are borne out, a jury could find that the two entities' operations are so related that they in fact act as a single employer and are jointly liable under the FLSA.  *See Juarez* v.

8

*449 Rest., Inc.*, 29 F. Supp. 3d 363, 368 (S.D.N.Y. 2014).  As such, Plaintiff has met her burden on this issue at this stage in the litigation.  *See id.*

The FLSA defines "enterprise" as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units[.]"  29 U.S.C. § 203(r)(1).  Accordingly, even if two entities are nominally separate, they may constitute a single "enterprise" for FLSA liability purposes.  *Brennan* v. *Arnheim & Neely, Inc.*, 410 U.S. 512, 518 (1973); *see also Arculeo* v. *On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (describing the "well-established authority" that an employee "technically employed on the books of one entity" may hold "another entity" liable for certain employment violations if the two are part of a "single integrated employer").  In determining whether the single enterprise theory applies, courts focus on whether the relevant entities (i) engage in "related activities," as demonstrated by "operational interdependence"; (ii) perform those activities through "unified operation" or "common control"; and (iii) share a "common business purpose*.*"  *Id.*; *see also Bowrin* v. *Cath. Guardian Soc.*, 417 F. Supp. 2d 449, 458 (S.D.N.Y. 2006).  "Enterprise coverage has been interpreted broadly by the courts."  *Boekemeier* v. *Fourth Universalist Soc'y in City of New York*, 86 F. Supp. 2d 280, 286 (S.D.N.Y. 2000).  Accepting Plaintiff's allegations, each of these considerations weighs in favor of treating Liberty One and Liberty Brooklyn as a single enterprise.

###### a.     Related Activities

To begin, Plaintiff's pleading adequately alleges that Liberty One and
Liberty Brooklyn perform "related activities" and exhibit "operational
interdependence."  Activities are "related" for purposes of the FLSA when they
are "auxiliary or service activities," such as central office activities,
bookkeeping, auditing, purchasing, advertising, and other services.  *Archie* v.
*Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 525 (S.D.N.Y. 1998); *see also*
*Bowrin*, 417 F. Supp. 2d at 458.  The "critical inquiry" in determining whether
multiple entities' activities are "related" is whether there is "operational
interdependence" in fact.  *Archie*, 997 F. Supp. at 525.  Entities which provide
"mutually supportive services to the substantial advantage" of each are
operationally interdependent and thus are treated as a "single enterprise."
*Boekemeier*, 86 F. Supp. 2d at 280.

Plaintiff alleges that she was interviewed and hired by a Liberty One
human resources representative at Defendants' shared office space and then
officially worked for and was paid by Liberty Brooklyn, indicating that Liberty
One provided central office services to Liberty Brooklyn.  (Ramirez Decl. ¶ 3;
*id.*, Ex. B).  *See Brennan*, 410 U.S. at 513-18 (finding that a management
company "directing operations" at the managed buildings, which included
hiring and firing the employees working at them, weighed in favor of finding
"related activities" between the management company and the buildings'
owners); *Xiao Ling Chen* v. *XpresSpa at Term. 4 JFK, LLC*, No. 15 Civ. 1347
(CBA) (CLP), 2016 WL 11430475, at *5 (E.D.N.Y. Feb. 16, 2016) (finding that

one entity's central office providing HR services to the others' employees indicated "related activities"), *report and recommendation adopted sub nom. Chen* v. *XpresSpa at Term. 4 JFK, LLC*, No. 15 Civ. 1347 (CBA) (CLP), 2016 WL 5338536 (E.D.N.Y. Sept. 23, 2016).   And as Plaintiff notes, Defendants share a phone number, making each dependent on the other for communication and day-to-day management and further reinforcing the intertwined nature of their operations.   (Pl. Reply 10).   *See Chen*, 2016 WL 11430475 at *5 (finding that a set of entities sharing an email address indicated that their activities were "related").   Further, Plaintiff alleges that it was her and her co-workers' understandings, at all times of employment, that the entities comprised "one big company" with various locations.   (Ramirez Decl. ¶ 3).   Therefore, at this preliminary stage, Plaintiff has sufficiently alleged facts supporting the conclusion that the two entities engaged in "related activities."

> **b.   Common Control**

The control prong also supports a finding of integration.   Department of Labor regulations define "control" as the "power to direct, restrict, regulate, govern, or administer the performance of the activities."   29 C.F.R. § 779.221. "'Common' control therefore exists where the performance of the described activities is controlled by one person or by a number of persons, corporations, or other organizational units acting together."   *Id.*; *Lingmain Yang* v. *Everyday Beauty Amore Inc.*, No. 18 Civ. 729 (BMC), 2018 WL 4783968, at *3 (E.D.N.Y. Oct. 3, 2018).   Notably, "[c]ommon control" may exist without common ownership.   *Archie*, 997 F. Supp. at 526.

Plaintiff has sufficiently alleged that Defendants are under "common control" for reasons similar to the related activities analysis.  Plaintiff submits that the entities share a human resources department, and as noted, that it was a Liberty One employee who hired Plaintiff and assigned her to Liberty Brooklyn.  (Ramirez Decl. ¶ 3).  *See Herman* v. *RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (noting that the power to hire employees is a key consideration in analyzing whether an alleged employer exercised "control" over an employee for FLSA purposes).  Plaintiff also alleges overlap in the entities' senior management, with Joseph Kramer, Liberty Brooklyn's CFO, also serving as a Liberty One Vice President.  (Pl. Reply 10).  *See Archie*, 997 F. Supp. at 526-27 (considering fact that individuals simultaneously held executive roles at two distinct entities as evidence of common control of the entities).  And while the companies' respective ownership structures are not clear from the parties' submissions, common ownership is not a prerequisite for "common control."  *Id.* at 526 (emphasizing that common ownership is indicative of, but not necessary for, "common control").

### c.    Common Business Purpose

Finally, Plaintiff adequately alleges that the Defendants share a "common business purpose."  A "common business purpose" is found where there is coordinated commercial activity conducted in competition with other private entrepreneurs.  *Bowrin*, 417 F. Supp. 2d at 459.  "A finding of a common business purpose generally requires evidence of two entities engaging in complementary businesses that are substantially operationally

interdependent." *Rosario* v. *Mis Hijos Deli Corp.*, No. 15 Civ. 6049 (LTS) (DCF), 2018 WL 4636822, at *6 (S.D.N.Y. Sept. 27, 2018) (internal citation omitted).

Plaintiff adequately alleges a "common business purpose" by pleading facts indicating interdependence, shared management, and a parent company-subsidiary relationship.  (Ramirez Decl. ¶ 3).  Again, the allegations suggest that Liberty One hires employees to work for Liberty Brooklyn; Liberty One and Liberty Brooklyn share executive officers; Liberty One and Liberty Brooklyn share office space and a phone number; and Liberty One's Human Resources Manager works with Liberty Brooklyn's supervisors as well.  (Ramirez Decl. ¶ 3).  These allegations plainly reflect Liberty One and Liberty Brooklyn engaging in complementary activities for their presumed mutual benefit.

Defendants do not convincingly dispute these points.  They merely repeat that the two are distinct entities and that Plaintiff worked (officially) only for Liberty Brooklyn.  (Def. Opp. 2).  Even if true, these facts do not refute or respond to the single enterprise theory that Plaintiff presents and that is well-established in FLSA actions.  *See, e.g.*, *Brennan*, 410 U.S. at 518.  If maintaining distinct corporate forms were enough to defeat a single integrated enterprise allegation, the doctrine would be meaningless: It is, after all, specifically applied in circumstances where entities are nominally separate but are, in effect, part of the same organizational structure such that it would be illogical to shield one from liability.  *See, e.g.*, *Arculeo*, 425 F.3d at 198; *Juarez*, 29 F. Supp. 3d at 368 ("As a result, the fact that [defendants] are distinct entities does not insulate them from liability at this stage, because all

13

[d]efendants that compose the enterprise count as Plaintiff's employer."). Facts revealed in discovery may ultimately disprove Plaintiff's theory. But because Plaintiff has adequately alleged that Defendants operate as an integrated enterprise, both are proper parties to this action.

### 2. The Court Will Conditionally Certify a Collective Action Limited to Certain Categories of Workers at 249 Varet Street

Plaintiff seeks conditional certification of a collective of all current and former non-exempt employees ("including, but not limited to cleaning professionals, and technicians among others") employed by Defendants within the six years prior to the date she filed the Complaint. (Pl. Br. 1). Defendants oppose conditional certification on three main bases: (i) Plaintiff does not allege that she herself was subject to a FLSA violation (Def. Opp. 10-14); (ii) putative collective members are not similarly situated to Plaintiff (*id.* at 2); and (iii) even if the Court were to grant conditional certification, Plaintiff's proposed collective is overbroad and should be limited to cleaners at the 249 Varet Street location (*id.* at 4). The Court finds that conditional certification is warranted, albeit of a more limited group of workers than Plaintiff seeks.

#### a. Unlawful Practice as to Plaintiff

Defendants first argue that regardless of the allegations regarding a "common policy" of FLSA violations, Plaintiff has failed to even allege that she herself was the victim of any FLSA violations. (Def. Opp. 10-14). Defendants argue that (i) the payroll records Plaintiff submitted (*see* Lee Decl., Ex. B) do not show any overtime hours for which Plaintiff was insufficiently compensated and (ii) Plaintiff failed to allege with precision the hours she worked per week.

14

(*Id.*).  More specifically, Defendants argue that the "time [Plaintiff] worked per week fluctuated dramatically," and note that in 25 of 39 pay periods for which Plaintiff submitted paystubs, she worked less than 40 hours.  (*Id.*).  Plaintiff counters that the omission of overtime hours from the payroll records does not defeat her claim (and in fact supports it) because her allegation is that Defendants required her to clock out early and thus her overtime work is not reflected on her timesheets.  (Pl. Reply 2-3).  Plaintiff further responds that even if Defendants' contention that she only worked overtime in *some* of the pay periods were accurate, her allegations as to those pay periods are sufficient to state a claim under the FLSA.  (Pl. Reply 2-3).  Plaintiff has the stronger argument.

Per the FLSA, an employee who works "in excess of" 40 hours shall be compensated for that excess work "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  The Second Circuit has concluded that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy* v. *Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).

In *Lundy*, the Second Circuit held that the plaintiffs failed to state a claim under the FLSA because, in general, they alleged with insufficient specificity the weeks in which they were supposedly under-compensated.  *See Lundy*, 711 F.3d at 114-16.  One plaintiff worked somewhat inconsistent hours that "typically" were around 37.5 per week.  *Id.* at 114-15.  She also claimed to

15

be, at times, assigned additional 12.5-hour shifts, forced to work slightly longer-than-scheduled shifts, or forced to work during unpaid break time. *Id.* But because she qualified all allegations of unpaid hours with "typically" or "occasionally," the Second Circuit reasoned that even if her allegations were true, there was no way to know whether those unpaid hours coincided with weeks in which the extra time would push her beyond the 40-hour mark. *Id.* Another *Lundy* plaintiff alleged that she too was forced to work during her unpaid break time and to complete pre- and post-shift work, but the words "typically" and "often" drew the Court's ire; it similarly reasoned that such a pleading invited mere "speculation" as to whether those unpaid hours occurred during weeks where the plaintiff's working hours exceeded 40, triggering FLSA liability. *Id.*

Plaintiff's allegations here are quite different. Like the plaintiffs in *Lundy*, Ramirez's payroll records indicate that her hours were inconsistent; she was paid for as many as 48 hours and as few as 8.05 hours on various weeks. (Lee Decl., Ex. B). But unlike the plaintiffs in *Lundy*, Ramirez does not allege that she "typically" or "often" or "occasionally" completed unpaid post-shift work; she alleges a *daily routine* of time shaving. (Ramirez Decl. ¶ 7 ("I was time shaved about thirty (30) minutes every day I worked."); *id.* ¶ 8 (alleging that she was told to clock out "[e]veryday around 4:30 p.m." but then directed to continue working)). Even noting, as Defendants point out, that many of Plaintiff's payroll records reflect workweeks of far fewer than 40 hours, Plaintiff still submits records of 16 weeks in which she worked 40 or more hours. (Lee

16

Decl., Ex. B).  Therefore, in at least those 16 weeks, Plaintiff *necessarily* alleges that she was not compensated for work completed in excess of 40 hours.  In addition, in six other weeks, Plaintiff's payroll records show that she worked between 37.5 and 40 hours, pushing her total weekly hours above 40 if the approximately two-and-one-half unpaid hours she claims to have worked per week were added in full.  (*Id.*).  This degree of specificity not only goes beyond that provided by the *Lundy* plaintiffs, but is precisely what the Second Circuit faulted the *Lundy* plaintiffs for not providing.  *See Lundy*, 711 F.3d at 115 (contrasting the plaintiffs' vague allegations with a theoretical case in which plaintiffs alleged that the violations occurred every day, week, or month, and indicating that the latter allegations would have been sufficient).

Defendants' claim that Plaintiff fails to allege a specific week in which she was un- or under-compensated is therefore incorrect.  And as Plaintiff points out, Defendants' cases to the contrary are unconvincing.  In *Huertero-Morales* v. *Raguboy Corp.*, the time-shaving claim failed not because there were some weeks in which the plaintiff worked fewer than 40 hours (as Defendants seem to suggest), but because, among numerous other flaws, the plaintiff's allegations were internally inconsistent and in *none* of the relevant weeks did he work 40 or more hours.  No. 17 Civ. 2429 (JCF), 2017 WL 4046337, at *3 (S.D.N.Y. Sept. 12, 2017).  The pleadings in *Limauro* v. *Consol. Edison Co. of New York* were similarly faulty, because they were qualified with the same "typically," "often," and "occasionally" language that the *Lundy* Court rejected, and thus could not establish any specific weeks in which the employees were

17

underpaid.  No. 20 Civ. 3558 (CM), 2021 WL 1226872, at *2 (S.D.N.Y. Mar. 31, 2021); *see also Ramirez* v. *Temin & Co.*, No. 20 Civ. 6258 (ER), 2021 WL 4392303, at *18 (S.D.N.Y. Sept. 24, 2021); *Cromwell* v. *N.Y.C. Health & Hosps. Corp.*, No. 12 Civ. 4251 (PAE), 2013 WL 2099252, at *1 (S.D.N.Y. May 15, 2013) (both finding similarly vague pleadings insufficient to support a FLSA claim).  As explained, Plaintiff's allegations do not share that flaw.  While Defendants are correct that a plaintiff may not simply state that they often worked more than 40 hours per week and move on, that standard is one Plaintiff plainly surpasses.

### b.    Common Policy or Plan

Next, the Court finds that Plaintiff has met her modest burden of showing that Defendants subjected her and others to a common policy or plan that violates the FLSA.  Defendants' core contention is that Plaintiff's affidavit is not sufficiently detailed or specific to make this showing.  (Def. Opp. 10-14).  A plaintiff cannot meet her burden at the first step of the certification inquiry by relying upon "unsupported assertions," *Myers*, 624 F.3d at 555 (quoting *Dybach* v. *Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567 (11th Cir. 1991)), or "conclusory allegations," *Sanchez* v. *JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (internal citation omitted).  Here, Plaintiff has provided a degree of specificity that courts in this District have routinely deemed sufficient at this initial stage.

In *Sanchez* v. *Gansevoort Management Group, Inc.*, the plaintiff submitted a single affidavit in which she swore to have "observed" other employees with

the same job duties and to "have knowledge that" those employees were not paid the overtime rate they were due.  No. 12 Civ. 75 (KBF), 2013 WL 208909, at *1 (S.D.N.Y. Jan. 10, 2013).  Those barebones allegations were sufficient to carry the plaintiff's "light burden."  (*Id.*).  Similarly, in *Hernandez* v. *Bare Burger Dio Inc.*, the plaintiff's motion for conditional collective certification was granted based only on a declaration describing his personal experiences and his observations of other employees' similar experiences.  2013 WL 3199292, at *1-3.  In so ruling, the *Hernandez* court noted that courts in this Circuit "routinely" grant conditional collective certification "based solely on the personal observations of one plaintiff's affidavit."  *Id.*  And *Khamsiri* v. *George & Frank's Japanese Noodle Rest. Inc.* is more of the same: a court in this District found conditional certification warranted based on a single plaintiff's declaration that she and other non-exempt employees were subject to FLSA violations.  2012 WL 1981507, at *1.

Plaintiff's attestations are similar to, if not more detailed than, the attestations deemed sufficient in *Gansevoort*, *Hernandez*, and *Khamsiri*. Plaintiff exclusively relies upon her own affidavit in support of certification, and therein relies heavily upon her own experiences and observations, as all three plaintiffs in those cases did.  (*See generally* Ramirez Decl.).  Unlike in those cases, Plaintiff also names several employees with whom she has discussed those experiences; describes with specificity a daily routine of alleged time-shaving as well as the employer who oversaw it; provides the apparent institutional rationale behind the practice; and describes her and her co-

19

workers' reasons for not speaking up.  (*Id.* ¶¶ 8, 11).  While this would be an easier case had Plaintiff provided more specifics about her conversations with coworkers, such as the contexts in which they arose or their specific content, *see, e.g.*, *Zhao* v. *Surge Priv. Equity LLC*, No. 22 Civ. 7314 (KPF), 2023 WL 3477591, at *2 (S.D.N.Y. May 16, 2023), all three above-cited cases make no mention of any conversations with other employees and still were adequate to support conditional collective certification.

To be clear, Plaintiff's motion does not clear the sufficiency threshold by much, and collective certification motions with arguably comparable levels of support have, in some instances, been denied.  *See, e.g.*, *JMP Ventures*, 2014 WL 465542, at *2.  Further, and as noted, Plaintiff will face a substantially higher burden "on a fuller record" at the second stage of certification, where she will risk collective decertification or division if the evidence elicited in discovery does not bear out her factual allegations.  *Myers*, 624 F.3d at 555.  But for the above-stated reasons and because of the relatively low burden plaintiffs face at this stage, the Court finds conditional certification as to the alleged time-shaving practice to be appropriate.

### c.   Scope of the Collective

In addition to arguing that Plaintiff has not adequately alleged a common unlawful policy, Defendants contend that Plaintiff's proposed collective is too broad.  (Def. Opp. 14).  Specifically, Defendants argue that any collective should be limited to cleaners at the 249 Varet Street location, which was Plaintiff's position and her primary work site (and the only worksite she

specifically names).  (*Id* at 18).  Plaintiff, on the other hand, seeks conditional certification of a larger group encompassing all non-exempt employees at all of Defendants' locations.  (Pl. Br. 1).

"A FLSA collective may cover individuals with multiple job functions 'provided that [the employees] are subject to a common unlawful policy or practice.'" *Gomez* v. *Kitchenette 123 Inc.*, No. 16 Civ. 3302 (AJN), 2017 WL 4326071, at *5 (S.D.N.Y. Sept. 5, 2017) (quoting *Zaldivar* v. *JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 323 (E.D.N.Y. 2016)).  But where a plaintiff fails to provide sufficient details that the proffered unlawful policy or practice also affected employees in different job functions or roles, courts will limit the collective to only those job functions for which the plaintiff bore his or her evidentiary burden.  *See, e.g., id.* (conditionally certifying collective of delivery persons, but not all tipped employees, because "the assertions in the affidavit that go beyond delivery persons are insufficiently detailed to justify certification of a broader collective"); *Sexton* v. *Franklin First Fin., Ltd.*, No. 08 Civ. 4950 (JFB) (ARL), 2009 WL 1706535, at *10 (E.D.N.Y. June 16, 2009) (limiting collective "to only those employees as to whom there are allegations that they have been affected by defendants' policy").  The same principle applies to one seeking to certify a collective encompassing multiple work sites, as the collective will be limited to the locations for which the plaintiff has sufficiently alleged a "common plan."  *See Taveras* v. *D & J Real Est. Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018).

Here, as discussed, Plaintiff has met her modest burden of showing that conditional certification of a collective is warranted.  She outlines her personal experience and observations and references numerous conversations with coworkers, each of whom Plaintiff identifies as "cleaning staff."  (*See generally* Ramirez Decl.).[5]  Plaintiff does not, however, provide any allegations establishing a "common plan" extending beyond the cleaning staff.  (*Id.*).  Plaintiff's submissions do not mention any employee classifications beyond cleaning personnel, and the coworkers with whom Plaintiff conversed are exclusively cleaning personnel.  Given the parties' agreement that Liberty Brooklyn is in the business of providing "cleaning services" and "janitorial services," it is unclear how drastically this limitation will actually reduce the number of potential opt-in plaintiffs.  (Ramirez Decl. ¶ 2; Def. Opp. 4).  But to the extent that Plaintiff's proposed collective includes non-cleaning personnel, the Court rules that those non-cleaning employees are beyond the group that Plaintiff has shown to be "similarly situated" with respect to the alleged FLSA violations.

Nor does Plaintiff meet her evidentiary burden for extending the collective beyond the 249 Varet Street location where she principally worked.  While she avers that she substituted at "various locations" "throughout New York City," she only names only that one.  (*See generally* Ramirez Decl.).  She fails to

---

[5]     Defendants refer to Plaintiff's job title as "maintenance worker."  (*See, e.g.*, Def. Opp. 2, 20).  Because the Court cannot consider the factual assertions contained in Defendants' opposition, *Escobar*, 2015 WL 4726871, at *3, it accepts Plaintiff's characterization of her role for purposes of the instant motion.

22

allege, with any specificity, where those other locations were; how often or when she substituted there; how they were managed in relation to the other locations; how employees were hired or assigned to them; which coworkers she conversed with or where they conversed; or any other details that would bolster her argument that the alleged time-shaving extended beyond the one location of which she specifically alleges firsthand knowledge.

Plaintiff's principal case in support of extending the collective to other locations, including those of which she has no firsthand knowledge, does not aid her cause. It is true that in *Garcia* v. *Chipotle Mexican Grill, Inc.*, a district court conditionally certified a collective including locations at which the plaintiff had not himself worked. No. 16 Civ. 601 (ER), 2016 WL 6561302, at *1 (S.D.N.Y. Nov. 4, 2016). But the plaintiff in that case named five locations where he did work over the course of five years and provided specific dates for his employment at each one. *Id.* The plaintiff described conversations with 34 co-workers across those five locations and noted that all of defendants' stores used the same time-recording system. *Id* at *2. The court in *Chipotle* reasoned that the plaintiff provided sufficient allegations of a "common policy or plan" because he provided evidence that he was transferred between an identified group of locations; all of the locations were advertised and marketed together; the defendants owned and operated all of them; and the general depth of the plaintiff's submissions supported an inference of a city-wide plan. *Id* at *8. The court noted, though, that even *that* was a "close case," and the plaintiff in

*Chipotle* provided a substantially more robust record with respect to the other locations (beyond those at which he worked) than Plaintiff here has.  *Id.*

Here, Plaintiff has cleared the threshold for establishing a "common policy," but just barely, and in so doing she relies heavily on her personal observations.  To the extent that she attempts to include opt-in plaintiffs in roles or at locations for which she has *no* personal experience or observations, she reaches too far.  The Court therefore limits the proposed collective to cleaning staff at the 249 Varet Street location.

### 3.    The Court Orders Pre-Certification Discovery

Having partially granted Plaintiff's motion for collective certification, the Court now considers the remainder of Plaintiff's motion.  Plaintiff requests that the Court compel production "in Excel format" of various pieces of personal information relating to all members of the proposed collective "within ten (10) days" of the Court's order resolving this motion.  (Pl. Br. 1-2, 14).  This request is unopposed.  The Court finds that production of this information is generally warranted but adds two small adjustments.

*First*, any request for covered employees' social security numbers is denied, though it is unclear whether this was in fact an intended request due to inconsistencies within the motion.  Throughout her motion, Plaintiff requests names, titles, compensation rates, dates of employment, last known mailing addresses, email addresses, and all known telephone numbers for the collective's potential opt-in plaintiffs.  (Pl. Br. 1-2, 14).  She initially includes social security numbers in this list (*see id.* at 1), but then omits this request in

a subsequent recitation (*id.* at 14).  In any case, if Plaintiff is requesting covered employees' social security numbers, that request is denied.  Courts in this District have repeatedly declined to compel production of social security numbers absent a demonstration by the plaintiff "with specificity" that such sensitive information is necessary.  *Benavides* v. *Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 489 (S.D.N.Y. 2016) (collecting cases).  Here, there is no such demonstration, much less a specific one.  Plaintiff's other requests for employee information are granted, in line with Circuit-wide precedent.  *See id.* at 488 ("Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action." (internal citations omitted) (collecting cases)).

*Second*, as this Court recently ordered on a very similar request, production is compelled within fourteen, rather than ten, days from the entry of this Opinion and Order.  *See Zhao*, 2023 WL 3477591, at *6.

### 4. The Court Orders Modified Notice to Prospective Collective Members

The Court next addresses the scope and substance of the notice that will be provided to putative members of the collective.[6]  The Court has reviewed Plaintiff's proposed notice, submitted with her motion for conditional

---

[6]     Plaintiff also submitted a proposed "Consent to Sue" form alongside her proposed notice.  (Lee Decl., Ex. A).  Defendants have not raised any objections to this proposed form, and thus the Court grants Plaintiff's motion to distribute the form.  However, Plaintiff is directed to amend the form to provide for a 60-day opt-in period, to be consistent with the amended notice.  *See infra.*

certification.  (Lee Decl., Ex. A).  Defendants raise only a few specific objections to Plaintiff's proposed notice: they argue that (i) the notice period should be limited to three, rather than six, years; (ii) equitable tolling should be determined on a case-by-case, rather than blanket, basis; (iii) the opt-in period should be reduced to 60 days; and (iv) any references to NYLL claims should be stricken from the notice.  (Def. Opp. 20-22).[7]  Ultimately, the Court approves Plaintiff's proposed notice with certain modifications described below.

### a.   The Temporal Scope of the Notice and Opt-In Period

The Court begins with issues related to the temporal scope of the proposed notice — including the appropriate statute of limitations and equitable tolling — and the length of the opt-in period.  Defendants contend that Plaintiff's proposed six-year notice period is excessive, as the FLSA has a maximum three-year statute of limitations.  (Def. Opp. 20).

The FLSA has a three-year statute of limitations for willful violations of its overtime provisions.  *Glass* v. *A.K. Allen Co., Inc.*, No. 10 Civ. 804 (ADS) (ETB), 2010 WL 11632764, at *2 (E.D.N.Y. Oct. 21, 2010).  Sensibly, then, courts often set a notice period for three years before the filing of the complaint in a FLSA case.  *See, e.g.*, *Mongiove* v. *Nate's Corp.*, No. 15 Civ. 1024 (NGG) (RML), 2016 WL 590460, at *6 (E.D.N.Y. Feb. 11, 2016).  "Some courts in the Second Circuit have permitted six-year notice periods in conditionally certified FLSA collective actions which also involve NYLL claims" in order to account for

---

[7]     Defendants also objected to the inclusion of workers beyond cleaners in their discussion regarding the proposed notice.  (Def. Opp. 14).  The Court addressed this issue in its discussion of conditionally certifying a collective.  *See supra* Section 2.B.

the NYLL's six-year statute of limitations.  *Franze* v. *Bimbo Foods Bakeries*
*Distrib., LLC*, No. 17 Civ. 3556 (NSR) (JCM), 2019 WL 1417125, at *4 (S.D.N.Y.
Mar. 29, 2019) (collecting cases).  But "the growing trend in this Circuit is … to
use a three-year rather than a six-year notice period when the motion before
the court seeks certification under the FLSA rather than under Federal Rule[]
of Civil Procedure Rule 23 in connection with NYLL claims."  *Id.* (collecting
cases).  This is so because courts have recognized that authorizing notice of
FLSA-only claims to putative collective members who are otherwise time-barred
from bringing claims may promote confusion should counsel later move for
class certification of NYLL claims.  *See, e.g.*, *Bhumithanarn* v. *22 Noodle Mkt.*
*Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *5 (S.D.N.Y. July 13,
2015) (collecting cases).

Because the instant motion is only for conditional certification of a
collective under the FLSA, and because the Court cannot be assured at this
stage that counsel will later seek certification of a NYLL class, much less be
successful in doing so under Rule 23, the Court does not find a six-year notice
period to be appropriate.  Instead, the Court authorizes notice to be sent to the
relevant putative collective members for the three years prior to the July 11,
2022 filing of the Complaint.

Having determined that the appropriate notice period is three years, the
Court turns to the related issue of equitable tolling.  "Because equitable tolling
issues often arise as to individual opt-in plaintiffs …, courts frequently permit
notice to be keyed to the three-year period prior to the filing of the complaint,

27

with the understanding that challenges to the timeliness of individual plaintiffs'
actions will be entertained at a later date." *Yap* v. *Mooncake Foods, Inc.*, 146 F.
Supp. 3d 552, 565 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting
*Gaspar* v. *Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2014 WL 4593944,
at *7 (S.D.N.Y. Sept. 15, 2014)); *see also Douglas* v. *Anthem Prods., LLC*, No. 18
Civ. 5789 (VEC), 2019 WL 78988, at *5 (S.D.N.Y. Jan. 2, 2019) (collecting cases
and explaining that "[w]hether tolling is appropriate [for potential members of
the FLSA collective action] is best addressed on an individual basis").  As such,
the Court agrees with Defendants and finds that "it is unnecessary to
determine this issue now, as 'it is not yet clear whether or not any potential
plaintiffs will be barred from this action due to a delay in notice.'" *Mendoza*,
2013 WL 5211839, at *10 (quoting *Whitehorn* v. *Wolfgang's Steakhouse, Inc.*,
767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)).  The Court will "consider an
application from any opt-in plaintiff based on an individualized showing that
tolling is appropriate." *Yuefeng Shi* v. *TL & CG Inc.*, No. 19 Civ. 8502 (SN),
2020 WL 4586359, at *6 (S.D.N.Y. Aug. 10, 2020); *see also Zhao*, 2023 WL
3477591, at *8; *Katz* v. *Equinox Holdings, Inc.*, No. 20 Civ. 9856 (VEC), 2022
WL 2952143, at *3 (S.D.N.Y. July 26, 2022) (both adopting a similar approach).

Finally, Plaintiff's proposed notice includes a 90-day opt-in period.  (Lee
Decl., Ex. A).  However, "[c]ourts in this Circuit routinely restrict the opt-in
period to 60 days." *Sharma* v. *Burberry Ltd.*, 52 F. Supp. 3d 443, 465 (E.D.N.Y.
2014) (citations omitted); *see also, e.g.*, *Yap*, 146 F. Supp. 3d at 556-57 (same);
*Escano* v. *N&A Produce & Grocery Corp.*, No. 14 Civ. 4239 (PAC), 2015 WL

1069384, at *3 (S.D.N.Y. Mar. 11, 2015) (ordering a sixty-day opt-in period when the plaintiff "[did] not explain why a 90-day period is necessary"). Plaintiff has not explained why a longer-than-usual opt-in period is necessary. As such, the Court limits the opt-in period to 60 days.

### b.  The Content of the Notice

Defendants argue that "[a]ny references in the Notice to alleged claims under the NYLL should be stricken" because Plaintiff is not moving for NYLL class certification in the instant motion.  (Def. Opp. 22).  Defendants seem to suggest that avoiding reader confusion is the basis for this request.  (*Id.*).  The Court disagrees.  The proposed notice references the NYLL only three times. (Lee Decl., Ex. A).  The first two, one of which is an explanatory footnote, both explicitly distinguish the NYLL action from the FLSA action.  (*Id.* ("This Notice applies only to the FLSA collective action claims, not to the class action claim brought under the NYLL"); *id.* (explaining that a separate NYLL claim is also ongoing)).  The third reference also distinguishes the NYLL claim from the FLSA lawsuit by noting each claim's respective statute of limitations.  (*Id.*).  The Court cannot see how this clear language could engender the confusion Defendants fear.  Additionally, Defendants' cited authority does not directly stand for the principle for which Defendants uses it.  While it is true that in *Campos* the Court required a plaintiff to include the word "FLSA" before the word "claims" to clarify that all relevant claims stemmed from that statute, there is no risk of similar ambiguity here.  *See Campos* v. *Lenmar Rest. Inc.*, No. 18 Civ. 12359 (KPF), 2019 WL 6210814, at *5 (S.D.N.Y. Nov. 21, 2019).  In

fact, throughout the proposed notice Plaintiff repeatedly specifies that the instant lawsuit is brought under the FLSA, and all three references to the NYLL claim serve to clarify, rather than obfuscate, the distinction between the two statutes.  (*See generally* Lee Decl., Ex. A).  As such, Defendants' request to delete the proposed notice's references to the NYLL claim is denied.

### c.   The Form and Method of Distribution

Plaintiff requests that the Court permit her to disseminate the notice by mail, email, and text messages and to post the notice at Defendants' places of business.  (Pl. Br. 1-2; Dkt. #25-1 (proposed order)).  The Court approves sending the notice by mail, email, and text messages, which have become standard methods of distribution in this Circuit.  *See, e.g., Lijun Geng* v. *Shu Han Ju Rest. II Corp.*, No. 18 Civ. 12220 (PAE) (RWL), 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 9, 2019); *Knox* v. *John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 667 (S.D.N.Y. 2017).  The Court also grants Plaintiff's request that the notice be posted in employee common areas of Defendants' places of business, but consistent with the Court's findings regarding the collective's scope, only at the 249 Varet Street location.  *See, e.g., Geng*, 2019 WL 4493429, at *20.

### CONCLUSION

As detailed in this Opinion, Plaintiff's motion for conditional collective certification and for Court facilitation of notice is GRANTED IN PART and DENIED IN PART.  Specifically, the Court GRANTS Plaintiff's motion for conditional certification of a collective of cleaning workers employed by Defendants at 249 Varet Street within the three years prior to the filing of the

Complaint.  The Court DENIES Plaintiff's request for equitable tolling of the statute of limitations without prejudice as to its renewal on an individual basis.

Plaintiff's motion to send out the proposed notice to this putative collective is GRANTED with the modifications discussed in this Opinion. Plaintiff is ORDERED to submit a revised proposed notice for the Court's approval within fourteen days of this Opinion.  Upon this Court's approval of the revised notice, notice may be issued and posted consistent with its terms and this Court's orders.

Defendants are ORDERED to provide Plaintiff, in Microsoft Excel or equivalent format, the names, titles, compensation rates, dates of employment, last known mailing addresses, email addresses, and all known telephone numbers for all employees within the putative collective within fourteen days of the date of this Opinion.

The Clerk of Court is directed to terminate the pending motion at docket entry 25.

SO ORDERED.

Dated:      July 14, 2023
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge