UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IVELISSE RAMIREZ, *on behalf of herself, FLSA Collective Plaintiffs, and the Class*, <br><br> Plaintiff, <br><br> -against- <br><br> LIBERTY ONE GROUP LLC <br> and LIBERTY ONE BROOKLYN LLC, <br><br> Defendants | Case No.: **1:22-cv-05892** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND APPROVAL OF THE FLSA SETTLEMENT**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Telephone: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ...................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................ 1

    I.      PROCEDURAL HISTORY ......................................................................... 1

    II.     OVERVIEW OF INVESTIGATION AND DISCOVERY .................................. 1

    III.    SETTLEMENT    NEGOTIATIONS,    FURTHER    DISCOVERY    &
            PRELIMINARY APPROVAL .............................................................. 3

SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION............................. 4

ARGUMENT ........................................................................................................... 5

    I.      THE  SETTLEMENT  CLASS  MEETS  THE  LEGAL  STANDARD  FOR
         CLASS CERTIFICATION. ...................................................................... 5

         A.    Numerosity.................................................................................. 6

         B.    Commonality................................................................................ 6

         C.    Typicality .................................................................................... 7

         D.    Adequacy of the Named Plaintiff ................................................ 8

         E.    Certification Is Proper Under Rule 23(b)(3). ............................... 8

    II.     THE  PROPOSED  SETTLEMENT  IS  FAIR,  REASONABLE,  AND
         ADEQUATE AND SHOULD BE  APPROVED IN ALL RESPECTS. ............. 11

         A.    The Proposed Settlement Is Substantively Fair. ....................... 11

         B.    The Settlement Was the Result of Arm's Length Negotiation ................ 19

         C.    The Distribution of Class Notice Satisfied Due Process .......................... 20

III.    APPROVAL OF THE FLSA SETTLEMENT IS APPROPRIATE UNDER

FEDERAL LAW. ................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 9

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ........................... 23

*Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640 N.Y.S.2d 845, 847 (1996) ....................................................................................................................... 21

*Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969) ................................................................. 21

*Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423 (E.D.N.Y. 1990) ..................................... 18

*Campos v. Goode*, 2010 WL 5508100 (S.D.N.Y. 2010) .......................................................... 8

*Carillo v. 27-39 East 30 Rest. Corp.*, 13 CV 4491 (SDNY 2015) ........................................ 21

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) .................................... passim

*Clark v. Ecolab, Inc.*, 2009 U.S. Dist. LEXIS 108736, 2009 WL 6615729 (S.D.N.Y. 2009) ... 7, 9

*Comcast Corp. v. Behrend,* 133 S. Ct. 1426 (2013) ............................................................... 16

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ..................................... 6

*D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001)* ................................................. 12, 19

*deMunecas v. Bold Food, LLC,* 2010 WL 3322580 (S.D.N.Y. 2010) ...................... 14, 19, 20, 23

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006) ..................................................... 5

*Diaz v. E. Locating Serv., Inc.,* 2010 WL 5507912 (S.D.N.Y. 2010) .......................... 14, 19, 23

*Dorn v. Eddington Sec., Inc.*, 2011 WL 382200 (S.D.N.Y. 2011) ............................................ 7

*Dukes v. Wal-Mart Stores Inc.,* 564 U.S. 338 (2011) ........................................................... 16

*Dziennik v. Sealift, Inc.*, 2007 WL 1580080 (E.D.N.Y. 2007) ................................................ 8

*Francisco v. NY Tex. Care, Inc.*, 2022 U.S. Dist. LEXIS 55633 (E.D.N.Y. 2022) ................... 16

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ......................................... 6, 7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 120 S. Ct. 693 (2000) ................................................................................................................................... 16

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ............................................................... 6

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ........................................... 11

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ................................................................ 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................................... 10

*Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989) .................................................... 23

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, 2020 WL 1330744 (S.D.N.Y. 2020) ........................................................................................................................... 16

*In re Agent Orange,* 818 F.2d 168 (2d. Cir. 198) ...................................................................... 22

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....... passim

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ........................................................... 13

*In re Colt Indus.,* 155 A.D.2d at 157, 160, 553 N.Y.S.2d at 140, 142 (1st Dep't 1990) .............. 21

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177 (S.D.N.Y. 2007) ......... 19

*In re Ira Haupt & Co.*, 304 F. Supp. 917 (S.D.N.Y. 1969) .......................................................... 14

*In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008) ...................... 20

*In re Nasdaq Market-Makers Antitrust Litigation*, 187 F.R.D. 465 (S.D.N.Y. 1998) ................. 12

*In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) .................................. 14

*In re Prudential Securities, Inc.,* 164 F.R.D. 362, 368 (S.D.N.Y 1996) ....................................... 21

*In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008) .................................................................................................................................... 19

*In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ........................... 9

*In re Visa Check/Mastermoney Antitrust Litig. v. Visa, United States*, 280 F.3d 124 (2d Cir. 2001) ........................................................................................................................................... 9

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ......................................... 13

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986) ........................ 7

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ................................. 23

*Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................. 12

*Marisol A. by Forbes v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ............................................. 6, 7

*Marisol A. by Forbes v. Giuliani*, 185 F.R.D. 152 (S.D.N.Y. 1999) .......................................... 14

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243 (S.D.N.Y. 1998) ............................................... 13

*McBean v. City of N.Y.*, 228 F.R.D. 487 (S.D.N.Y. 2005) .......................................................... 9

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ............................................ 23

*McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328 (S.D.N.Y. 2010) ......... 8

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006) 9

*Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972) .......................................................................... 18

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (9th Cir. 1982) ................................. 18

*Perez v. Postgraduate Ctr. for Mental Health*, 2021 U.S. Dist. LEXIS 156116 (E.D.N.Y. 2021) .......................................................................................................................... 16

*Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483 (D.C. Cir. 1992) ................................. 22

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) ......................................................... 17

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006) ................... 6

*Rivera v. VI Development Group, LLC et al.*, 522485/2021 (Supreme Court, Kings County 2022) .......................................................................................................................... 21

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, 2003 WL 21136726 (S.D.N.Y. 2003) ................. 13

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ........................................................................... 8

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ..................................................... 9

*Silber v. Mabon,* 18 F.3d 1449 (9th Cir. 1994) ............................................................................. 22

*Spokeo, Inc. v. Robins,* 578 U.S. 330, 136 S. Ct. 1540 (2016) .................................................... 15

*Torres v. Gristede's Corp.*, 2006 WL 2819730 (S.D.N.Y. 2006) ................................................. 10

*Toure v. Cent. Parking Sys. of N.Y.*, 2007 WL 2872455 (S.D.N.Y. 2007)..................................... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ................................. 11, 17

*Weigner v. City of New York,* 852 F.2d 646 (2d Cir.1988) ........................................................... 21

*Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988).................................................... 22

*You Qing Wang v. XBB, Inc*., 2022 U.S. Dist. LEXIS 57481 (E.D.N.Y. 2022).......................... 16

## Rules

Fed. R. Civ. P. 23 ................................................................................................................ passim

Rule 23(c)(2)....................................................................................................................... 21

## Other Authorities

29 U.S.C. § 216(b) ................................................................................................................. 1

## INTRODUCTION

Plaintiff submits this Memorandum of Law in support of her Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiff's Motion for Final Approval"). The Parties' $75,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History

On July 11, 2022, Plaintiff, on behalf of herself and others similarly situated,  filed the instant lawsuit seeking to bring a Class and Collective Action Complaint against Defendants Liberty One Group LLC and Liberty One Brooklyn LLC ("Defendants") pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), alleging violations of the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et. seq. ("FLSA"), and the New York Labor Law ("NYLL"), by, *inter alia*: (i) failing to pay wages, including overtime, due to Defendants' time-shaving policies; and (ii) failing to meet the NYLL's requirements on wage statements and notices.

On September 21, 2023, the Parties engaged in a full-day in-person mediation with Christopher M. Kwok, a highly respected mediator experienced in resolving complex employment disputes. During this mediation, the Parties reached a settlement in principle and, thereafter, continued negotiating the terms of the class settlement, which was memorialized in the Settlement Agreement and Release ("Settlement Agreement").

### II.    Overview of Investigation and Discovery

Class Counsel conducted a thorough investigation of the claims and defenses, focusing on the underlying merits of Class Members' claims (defined below), the damages to which they may have been entitled, and the propriety of class certification. Prior to mediation, Plaintiff's Counsel

received and analyzed documentation produced by Defendants for settlement purposes only, including a class list of 43 employees, Plaintiff's complete wage and hour records and a 20% sampling of wage and hour documents for employees at 249 Varick Street in Brooklyn, New York. Plaintiff's Counsel also interviewed the Plaintiff concerning the claims in the case. Based on this discovery, Plaintiff's Counsel was able to assess the merits of Plaintiff's claims, the likelihood of class or collective action certification, and potential damages.

After investigating the claims of Plaintiff and the Class, in Plaintiff's and Class Counsel's view, it became apparent that certain claims carried significant risk, may be defeated, or at most, significantly weakened. Plaintiff wishes to avoid the risk of further litigating their claims. There is an inherent risk in going to trial of being unable to establish liability. A trial would involve significant risks to Plaintiff in light of the defenses available to Defendants, including Defendants' arguments that (1) there was dispute that Plaintiff and Class members engaged in any unpaid work, either during meal breaks, or post shift, and (2) even if Plaintiff and Class members did perform work during their break time, the amount of time spent performing work during the meal break would vary from person to person .

If Defendants were to succeed at trial in establishing that Plaintiff and the Class were properly paid for all hours worked, Plaintiff and class members would run the risk of obtaining less than the payment being received in the settlement, if anything at all. Moreover, Defendants maintain that they are unable to withstand a greater judgment. Considering the risks of ongoing litigation, the defenses available to Defendants, and the inability of Defendants to withstand a greater judgment, the settlement provides Plaintiff and the Class with a recovery that is both fair and reasonable.

The various risks on the substance of the claims and the challenges with achieving commonality on the class claims make this a good recovery for the Class. Based on the Claims Administrator's calculations of the actual settlement allocations to the 49 Class Members who did not opt out, the settlement payment will be $516.74. This per person payment is higher than many typical awards in "weeks worked" class settlement models. While Plaintiff believes that she could ultimately establish Defendants' liability, to do so would require significant factual development. Plaintiff's counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain. The proposed settlement alleviates these uncertainties. Moreover, given the current economic conditions, obtaining any further, timely payment on this class settlement would be a complete victory and would put money in the hands of workers who need it. This factor therefore weighs heavily in favor of final approval.

## III.    Settlement Negotiations, Further Discovery & Preliminary Approval

The formal parameters of the settlement were the result of contentious negotiations. In addition to numerous telephone conferences for settlement, the parties were ultimately able to reach a class settlement in principle through a full-day mediation overseen by Christopher M. Kwok. Prior to the mediation, Plaintiff submitted a detailed mediation statement which explained to Mr. Kwok the Plaintiff's and class' claims, noted Defendants' vulnerabilities, acknowledged risks, and provided and explained Plaintiff's damage calculations. Thereafter, the Parties continued to negotiate certain open settlement terms, which they memorialized in the Settlement Agreement, which was fully executed on April 15, 2024.

Because of the uncertainty of Plaintiff's legal position and the uncertainty of and maintaining class certification through trial, the Parties agreed to the settlement. On April 15, 2024,

Class Counsel then prepared and submitted a preliminary approval motion, which was approved by the Court on February 28, 2025.

## SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION

| Category | Settlement Term | Remarks |
|---|---|---|
| Gross Settlement Fund | $75,000 | The Fund, comprised of $75,000.00 for the Settlement Agreement, covers all of Defendants' obligations under the settlement, including attorneys' fees and costs, administration fees, service award, and Class Members' award (exclusive of payroll taxes). |
| Attorneys' Fees, Costs & Expenses | 1/3 of the Gross Settlement Fund $25,000 | Class Counsel has filed a motion for approval of attorneys' fees, cost and expenses with this motion. Such fees, costs and expenses are to be paid out of the Gross Settlement Fund. |
| Costs and Expenses | $4,679.28 | Filling fees, Service fees, Mediation fee, Mailing fees which are to be paid out of the Gross Settlement Fund. |
| Administration Fees | $10,000 Arden Claims Service LLC ("Arden") | Administration Fees are to be paid out of the Gross Settlement Fund. |
| Service Award | $10,000 | Service award of $10,000 to Plaintiff for her assistance to Class Counsel, services on behalf of the Class. Class Counsel has filed a motion for approval of this service award simultaneously with this motion. The service award is to be paid out of the Gross Settlement Fund. |
| Claims Made / Opt-out basis | Are class members required to file a claim form to receive a payment? | No. This is not a claims-made settlement. All Class members that do not opt-out and return a valid Anti-Fraud Identity Affirmation form, will then be mailed a check. Such forms shall be distributed to Class Members after final approval by the Court and must be returned by Class Members prior to receiving settlement checks and prior to receiving payment. |
| Allocation Formula | How will the individual settlement allocations be calculated? | After the deduction of all court-approved attorneys' fees and costs, administration fees, and service award from the Settlement Fund, Class Members will be paid on an equal pro rata basis. |

| Class Size | What is the class size? | 49 Class Members. |
| --- | --- | --- |
| Release | What is the scope of the release? | Every class member who does not opt out will release Defendants from all New York wage and hour claims. Every class member who endorses his or her check will release Defendants from Fair Labor Standards Act claims. |
| Funding | What is the status of Defendants' funding? | Defendants have fully funded the $75,000 settlement amount, which is currently being held in escrow by the Claims Administrator. |
| Reversion | Is there any reversion? | No. Any amounts leftover to the Administrator under this Agreement 180 days after the Effective Date shall be provided as *cy pres* donation to a non-profit organization devoted to the education, care or career training of children and adults with disabilities, to be mutually agreed upon by the parties. |

## **ARGUMENT**

### I.    **The Settlement Class Meets the Legal Standard for Class Certification.**

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). On February 28, 2025, the Court preliminarily certified the settlement class. The Court should now grant final certification because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are met. Plaintiff respectfully requests that the Court certify the following class for purposes of effectuating the settlement: Named Plaintiff and all current and former non-exempt employees employed at the: Varet, McDonald, and Sackett locations (including, but not limited to, cleaning professionals, and technicians) from July 11, 2016 to September 21, 2023. Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a)  are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims

or defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ.

P. 23(a).

Rule 23(b)(3) requires the Court to find that: "[Q]uestions of law or fact common to the

members of the class predominate over any questions affecting only individual members, and that

a class action is superior to other available methods for the fair and efficient adjudication of the

controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive

construction, and courts are to adopt a standard of flexibility" in evaluating class certification.

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting

*Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

## A.    Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . ."

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiff clearly satisfies

the numerosity requirement as there are 49 Class members.

## B.    Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to

test "whether the named plaintiff's claim and the Class' claims are so interrelated that the interests

of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of

Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must

share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181

(W.D.N.Y. 2005). There must be a "unifying thread" among the claims to warrant class

certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D at 181.

This case involves numerous common issues. Plaintiff and the Rule 23 class members all bring common claims involving allegations, which Defendants deny, that Defendants failed to pay Class Members their proper wages, including overtime, due to time shaving. Plaintiff also alleges, and Defendants deny, that Defendants failed to provide Class Members with wage statements and wage notices in conformity with New York law. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200, at *2 (S.D.N.Y. January 21, 2011) (Rule 23(a)(2) satisfied where common issues included whether defendants violated wage and hour laws by failing to pay overtime and spread of hours pay, making deductions from plaintiff's and class members' pay, and failing to keep accurate records of time worked); *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009 WL 6615729, at *3 (S.D.N.Y. November 27, 2009) (commonality satisfied where common issues included "whether Defendant violated wage and hour laws by failing to pay overtime premium pay for hours [class members] worked over 40 in a workweek, and failing to keep accurate records of time worked").

### C.    Typicality

Typicality is also satisfied. Typicality is satisfied "when each class member's claim rises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the

same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) . Here, Plaintiff's claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. Plaintiff and the Rule 23 Class Members performed the same or similar job duties as non-exempt employees, and allege that they were subject to the same policies as identified above. Because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims, Plaintiff satisfies the typicality requirement.

### D.    Adequacy of the Named Plaintiff

Plaintiff Ivelisse Ramirez is adequate class representative. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and … have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); *see also Campos v. Goode*, No. 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted). Here, Plaintiff satisfies the adequacy requirement because there is no evidence that Plaintiff's and class members' interests are at odds – on the contrary, Plaintiff's interests are aligned with the interests of the class.

### E.    Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1. Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…. Predominate over those issues that are subject only to individualized proof." *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/Mastermoney Antitrust Litig. v. Visa, United States*, 280 F.3d 124, at 139 (2d Cir. 2001). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Here, class members' common factual allegations and common legal theory – that all non-exempt employees employed by Defendants were subjected to the same unlawful policies, and that all such employees failed to receive proper wage statements and notices – predominate over any factual or legal variations among Class Members. *See Clark*, 2009 WL 6615729, at *5 (common factual allegations and common legal theory predominated over factual and legal variations among Class Members in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006), at

*16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages"). The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance. *See Frank*, 228 F.R.D. at 183 (holding that calculation of damages in overtime litigation does not impact the predominance analysis). Plaintiff therefore satisfies Rule 23(b)(3).

### 2. A Class Action Is a Superior Mechanism.

Plaintiff also satisfies the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); Here, concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Class treatment will create uniform resolution of the issues and achieve judicial economy, convenience and fairness to all parties.

II.     **The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.**

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). Judicial determination of procedural fairness involves examination of the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.[1]

**A.  The Proposed Settlement Is Substantively Fair.**

In *Grinnell Corp.*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible

---

[1] Defendants deny Plaintiff's allegations and assert that they complied with all applicable laws and regulations at all times.

11

recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors

weigh in favor of final approval of the Settlement Agreement.

1. **Litigation Through Trial Would Be Complex, Costly, and Long (Grinnell Factor 1).**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to

avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most

class actions are inherently complex, and settlement avoids the costs, delays and multitude of other

problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d

164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78. This case is no exception, with

49 putative class members with fact-intensive claims under both federal and state law. A

complicated fact-intensive trial would be necessary. "[C]lass actions have a well-deserved

reputation as being the most complex." *See In re Nasdaq Market-Makers Antitrust Litigation*, 187

F.R.D. 465 (S.D.N.Y. 1998). Preparing and putting on evidence at such a trial would consume

tremendous amounts of time and resources and demand substantial judicial resources. A trial on

damages, even on a representative basis, would be costly and would further defer closure. Any

judgment would likely be appealed, thereby extending the duration of the litigation. Moreover,

should the settlement not be approved, and the litigation continue, there would be significant delay

to engage in continued discovery and motion practice, and it is unknown when a trial on this matter

could feasibly occur. This settlement, on the other hand, makes monetary relief available to class

members, weighing in favor of final approval.

2. **The Reaction of the Class Has Been Positive (Grinnell Factor 2).**

"It is well-settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*,

186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be

taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Here, the claims administrator mailed the Court-approved notices ("Notices") of the class and collective action settlement to the class members. The Notices explicitly informed class members of their rights and the procedures to participate in the NYLL and FLSA settlements. After receipt of the Notice, no Class Members have objected to the settlement, and no Class Members have opted out of the settlement.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (Grinnell Factor 3).

The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (internal quotation marks omitted). The Parties' discovery here meets this standard. Class Counsel conducted in-depth interviews with the Plaintiff to determine the hours she worked, the wages she was paid, the nature of her daily activities, the basis and substance of her time shaving allegations, and other information relevant to her claims. Prior to the September 21, 2023 mediation, Plaintiff's Counsel received and analyzed documentation produced by Defendants for settlement purposes only, including a class list of 43 employees, Plaintiff's complete wage and hour records and a 20% sampling of wage and hour documents for employees at 249 Varick Street in Brooklyn, New York.

Based on these circumstances, the Parties were well-equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Diaz v. E. Locating Serv., Inc.,* No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010), at *5; *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010), at *5 (approving settlement where plaintiffs had obtained discovery through an informal exchange of information and engaged in mediation). Therefore, this factor also weighs in favor of final approval.

### 4.  Plaintiff Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5).

Although Plaintiff believes her case is strong, it is not without risk. "Litigation inherently involves risks." *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. by Forbes v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)) (internal quotation marks omitted). A trial on the merits would involve significant risk, as detailed in Section II, "Overview of Investigation and Discovery," *supra.*

Plaintiff and the Class allege that Defendants failed to pay them proper wages, including overtime, due to Defendants' time shaving. Plaintiff and the Class allege that they were time shaved on a daily basis due to: (i) Defendants' improper automatic thirty (30) minute meal break deduction, and (ii) Defendants' failure to pay Plaintiff and Class members for post shift work

performed off-the-clock. On a daily basis, whether Plaintiff and Class members were able to take a break or not, Defendants still always automatically deducted thirty (30) minutes as a meal break deduction. However, on a regular basis Plaintiff and Class members were unable to take free and clear meal breaks, because Defendants always interrupted them during this time and required them to perform work, which prevented them from enjoying a full thirty (30) minute free and clear meal break. Additionally, at all times, Defendants also required Plaintiff and Class members engage in thirty (30) minutes of uncompensated work off-the-clock at the end of their shifts. As a result, Plaintiff and Class members were time shaved approximately 2.5 hours each week. This claim would be risky if the case were to proceed to trial. First, this is because Defendants dispute that Plaintiff and Class members engaged in any unpaid work, either during meal breaks, or post shift. Second, even if Defendants were to concede that Plaintiff and Class members did perform work during their break time, the amount of time spent performing work during the meal break would vary from person to person. Proving this would rely heavily on witness testimony and Defendants would likely provide their own witnesses to counter such claims, which could impede Plaintiff's ability to defend his claim or result in a lower recovery.

Plaintiff and the Class brought claims pursuant to the Wage Theft Protection Act (WTPA) penalties and liquidated damages. Plaintiff and the Class allege that by providing wage statements that did not accurately reflect their hours worked, Defendants (i) failed to provide proper wage statements per requirements of the NYLL; and (ii) failed to provide wage and hour notices, at date of hiring and annually, per requirements of the NYLL. However, pursuing statutory penalties for Defendant's violations of the WTPA in federal court is risky in light of the Supreme Court's ruling in *Spokeo, Inc. v. Robins* that Article III's "injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete and particularized.'" 578 U.S. 330, 136 S. Ct. 1540, 1545

15

(2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693 (2000)). While some federal courts have concluded that wage notice and wage statement claims confer Article III standing notwithstanding these strictures. *See Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *24-25, 2020 WL 1330744 (S.D.N.Y. March 20, 2020), other federal courts, including several in this Circuit have concluded otherwise, holding that WTPA violations are insufficiently concrete and particularized to confer Article III standing on plaintiffs. *See Perez v. Postgraduate Ctr. for Mental Health*, 2021 U.S. Dist. LEXIS 156116 (E.D.N.Y. Aug. 18, 2021) (rejecting claim for violation of NYLL § 195(3) for failure to identify how missing information on wage statements caused injury); *Francisco v. NY Tex. Care, Inc*., 2022 U.S. Dist. LEXIS 55633, *16-17 (E.D.N.Y. March 28, 2022) ("While those may be technical violations of the NYLL, neither Plaintiff nor the record demonstrate how those technical violations led to either a tangible injury or something akin to a traditional cause of action"); *You Qing Wang v. XBB, Inc*., 2022 U.S. Dist. LEXIS 57481, at *35 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim.").Given the uncertain state of the law, there is potentially limited class liability on the WTPA claims.

### 5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (Grinnell Factor 6).

Even if preliminary class status is granted, the risk of maintaining that class certification through trial is also present, particularly in light of the *Dukes* and *Comcast* decisions. Further, Defendants may argue on a decertification motion that individual questions preclude class certification. The claims at issue are vulnerable to a highly individualized analysis on a person-by-person basis, such as how many hours were uncompensated. Settlement eliminates this risk, expense, and delay. This factor also favors final approval.

### 6.   Defendants' Ability to Withstand a Greater Judgment (Grinnell Factor 7).

Defendants maintain they cannot withstand a greater judgment. While Defendants may be able to withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank,* 228 F.R.D. at 186 (quoting *In re Austrian and German Holocaust Litigation*, 80 F Supp. 2d at 178 n.9 (internal citation marks omitted). The Settlement Agreement provides Class Members with reasonable and more prompt relief than they would receive at the conclusion of the litigation, presumably several years from now, and which relief is not guaranteed due to the risks involved in proving liability and damages. Moreover, due to the economic reality of the inflation crisis facing the U.S., Class Members who are low wage workers would receive a much needed monetary benefit from this settlement. Therefore, Defendants' inability to withstand a greater judgment weighs heavily in favor of the fairness of the Settlement.

### 7.   The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9).

The $75,000 settlement amount represents an excellent value given the attendant risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiff succeeded on all claims at trial and survived an appeal. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* (quoting *Wal-Mart,* 396 F.3d at 119).

The percentage recovery depends on the methodology of calculation. Prior to mediation, Plaintiff calculated a "best case scenario" in which Plaintiff and the Class prevail on all of their claims (including liquidated damages) to be approximately $800,000, of which the $75,000.00 settlement amount represents a 9% recovery. Excluding liquidated damages and WTPA penalties, the best-case scenario is reduced to $189,353.94 (a 40% recovery). The calculations were made based on robust assumptions of 2.5 hours of time shaving per week. A more conservative estimate, with reduced time shaving of off-the-clock hours yields $94,676.97 in damages for which the settlement percentage recovery is approximately **79%**.

Weighing the benefits of settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.,* 495 F.2d at 455 n.2. "It is well settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be  approximately  $121  million"). The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" (quoting *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement –a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" Id. (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)). The Proposed Settlement Is Procedurally Fair.

**B.     The Settlement Was the Result of Arm's Length Negotiation**

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations, and after experienced counsel had evaluated the merits of Plaintiff's claims. *See Diaz*, 2010  WL  5507912, at *4 (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" where plaintiffs had conducted a thorough investigation and engaged in extensive, arm's-length negotiations involving counsel and the services of an experienced class action mediator); *deMunecas*, 2010 WL 3322580, at *4 (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001)* at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Here, the settlement was reached after Plaintiff conducted a thorough investigation and evaluation of the claims, and after extensive negotiations between the Parties, including a full-day in-person mediation with Christopher M. Kwok during which the Parties engaged in a vigorous exchange regarding their respective claims and defenses.  Class Counsel spent significant effort to achieve the settlement. From the outset, Class Counsel thoroughly investigated the claims and defenses, focusing on the underlying merits of the class members' claims, the damages to which they were entitled, and the propriety of class certification. Prior to mediation, Plaintiff's Counsel received and analyzed documentation produced by Defendants for settlement purposes only,

including a class list of 43 employees, Plaintiff's complete wage and hour records and a 20% sampling of wage and hour documents for employees at 249 Varick Street in Brooklyn, New York. Plaintiff's counsel used the documents provided by Defendants for mediation, as well as the recollection and testimony of Plaintiff, to calculate the potential damages owed to Plaintiff and the Class Members prior to the Parties' private mediation on September 21, 2023. Plaintiff's Counsel conducted in-depth interviews with Plaintiff to determine the hours she worked, the wages she was paid, the nature of her daily activities, the basis and substance of her time shaving allegations, and other information relevant to her claims. This comprehensive discovery enabled Counsel to perform detailed class-wide damage calculations.

On September 21, 2023, the Parties engaged in a full-day in-person mediation with Christopher M. Kwok, where the parties reached a settlement in principle, subject to certain outstanding material terms. The parties continued to negotiate the settlement terms, which were memorialized in the Settlement Agreement, which was fully executed on April 15, 2024. . Lee Dec.at ¶ 7. . At all times during the settlement process, the Parties negotiated on an arm's-length basis. Lee Dec. at ¶12. These arm's-length negotiations involved counsel well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores,* 396 F.3d at 116; *deMunecas, 2010* WL 3322580 *4.

C.    **The Distribution of Class Notice Satisfied Due Process**

Ultimately, 49 class settlement notice packets were mailed and, of those, 47 were successfully delivered, for a total deliverable rate of approximately 96%. As such, we believe that the result of the class notice distribution is adequate and satisfies due process. While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that of reasonableness. *In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008),

citing *Wal–Mart,* 396 F.3d at 113–14. Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members. *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988); *In re Prudential Securities, Inc.,* 164 F.R.D. 362, 368 (S.D.N.Y 1996) (finding due process does not require that every class member receive actual notice if reasonable means chosen are likely to inform persons affected). See *Carillo v. 27-39 East 30 Rest. Corp.,* 13 CV 4491 (SDNY February 2, 2015) (60% delivery rate); See also *Rivera v. VI Development Group, LLC et al.,* 522485/2021 (Supreme Court, Kings County) (September 7, 2022) (38% delivery rate).

Rule 23(c)(2) requires the best notice practicable, not perfect notice. The word 'practicable' implies flexibility, with the type of notice depending upon the particular circumstances of each case. *Berland v. Mack,* 48 F.R.D. 121 (S.D.N.Y. 1969). Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail would in most cases be the 'best notice practicable.' *Id.* The Courts have consistently concluded that the parties' diligent effort to mail individual notices to all reasonably identifiable class members, the mailing of additional notice materials indirectly through interested third parties and the provision of publication notice meet the requirements of due process. *See Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640 N.Y.S.2d 845, 847 (1996) (mailing notice fulfilled due process-actual notice unnecessary).

Due process does not require actual receipt of the individual notice by each and every possible class member. *See In re Colt Indus.,* 155 A.D.2d at 157, 160, 553 N.Y.S.2d at 140, 142 (1st Dep't 1990) (approving notice by publication in two newspapers); *see also Weigner v. City of*

*New York,* 852 F.2d 646, 649 (2d Cir.1988) (holding "all risk of non-receipt" need not be eliminated), *cert. denied* 488 U.S. 1005 (1989); *Agent Orange,* 818 F.2d at 168; *Silber v. Mabon,* 18 F.3d 1449, 1451 (9th Cir. 1994) (holding class member bound by judgment although notice not received before opt-out date); *Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483, 1486-87 (D.C. Cir. 1992) (same, notice not received because of incomplete address).

In the instant action, the Court should find that Class Members were provided with adequate notice of the settlement. On February 28, 2025, Defendants' counsel provided Arden with a Class List containing the name, and if available, last known mailing and email addresses of each of the 49 original Class Members. On March 28, 2025, the Notice Packet was mailed via First Class Mail to 49 Class Members contained in the Class List for whom addresses were available. Arden received twelve (12) Notice Packets back as undeliverable. All twelve (12) Notice Packets were returned without a forwarding address. Arden performed an advanced address search on these addresses by using LexisNexis, a reputable research tool. Arden used the Class Member's name, previous address, and social security number, if one was available, to attempt to obtain a current address. Through the ten (10) advanced address searches performed, Arden was able to locate ten (10) updated addresses and Arden promptly re-mailed Notice Packets to Class Members to those updated addresses. Accordingly, Arden was able to re-mail a total of ten (10) Notice Packets. Ultimately, the number of Class Members who received Notice Packets was 47 out of the class list of 49. Two (2) class member was not ultimately located for a total undeliverable rate of approximately 4%. Accordingly, the Court should find that the notices of the proposed settlement of this case provided by First Class Mail, was the best notice practicable under the circumstances, and that the Claims Administrator acted reasonably in informing potential class members of the settlement.

### III.    Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiff also request that the Court approve the settlement of her FLSA claims. Plaintiff has brought her FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). True to the opt-in procedure, only individuals who cash their checks will release their FLSA claims. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Diaz*, 2010 WL 5507912, at *6. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. Lee Dec. ¶ 12. During the litigation, counsel highly experienced in wage and hour law represented Plaintiff and Defendants.

As of May 12, 2025, the deadline for class members to object to or opt-out of the settlement, no Class Members have opted out of the settlement, and no Class Members have objected. Lee Dec. ¶ 21.

Dated: New York, New York
      July 18, 2025

                      Respectfully submitted,

                      **LEE LITIGATION GROUP, PLLC**

                      By: *__/s/ C.K. Lee_____*
                      C.K. Lee (CL 4086)
                      Anne Seelig (AS 3976)
                      148 West 24th Street, Eighth Floor
                      New York, NY 10011
                      Tel.: 212-465-1188
                      *Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*